Williams *v.* Matthews et ux., Appellants.

34

Argued April 28, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Martin Croissant,* for appellants.—The paramount consideration is the best interest and permanent welfare of the child: Commonwealth v. Hoffman, 91 Pa. Superior Ct. 213; Commonwealth v. Miller, 84 Pa. Superior Ct. 409.

*Russell H. Adams,* and with him *George T. Walker,*

for appellee, cited: Heinemann's Appeal, 96 Pa. 112; Commonwealth ex rel Ganster v. McGee, 103 Pa. Superior Ct. 12.

PER CURIAM, July 14, 1933:

This is a habeas corpus proceeding brought by the mother for the custody of her five year old daughter. It is hardly necessary to repeat that the general rule applicable to cases of this kind is that the parent has the right of custody of the child unless the child's welfare would be more secure elsewhere. Where the matter is in balance, and both parties involved in the controversy, in the opinion of the court, are proper persons to have the custody of the child, the parent should be given the preference. Judge McNAUGHER has clearly set out the facts and has we think justified the position he has taken in awarding the child to its mother in the following opinion: "The testimony discloses the following uncontradicted facts. Shortly after the child's birth, petitioner, the mother, placed her in the care of a family, so that she herself would be left free to earn a livelihood. When the child was about two years old, the mother became dissatisfied with the attention accorded her (she was undernourished and sickly), and arranged with respondents that they should take her into their home and thus give the mother opportunity to continue her employment. Respondents at once made overtures to adopt the child but the mother refused. A month later they again urged adoption and the mother persisted in her refusal—according to her testimony, because she was unwilling to give up her child, and, according to respondents, because she feared publicity as to the child's parentage. Respondents continued thereafter to keep and care for the child and have done so for the past three years, the mother visiting her from time to time when not living with her. A year and a

half or two years ago the mother went to live with respondents. At her request, to avoid embarrassment, the child was not told that she was her mother but was allowed to think that respondents were her parents. No difficulty of any consequence arose between the parties until just before the petition was filed when, in connection with an altercation affecting the control of the child, petitioner told her she was her mother. Soon afterwards petitioner went to live elsewhere. Petitioner and respondents and petitioner's sister and brother-in-law, in whose home petitioner proposes to place the child, are all respectable persons and equally qualified to provide for the child's welfare. The husband respondent is at the present time earning about $600 a year more than the petitioner's brother-in-law. The latter is earning enough to support the child as well as his own family; and petitioner will pay him six or seven dollars a week for support if the child is given into her custody and control. Respondents have taken good care of the child and have expended in her behalf $100 or more for medical services.

"Respondents testified that petitioner gave the child to them permanently, renouncing verbally her rights as her mother. Petitioner emphatically denied this. She also testified that she offered to pay them for the child's support but that they refused to accept anything. After weighing the testimony and taking account of the demeanor of the witnesses, we are led to accept the mother's and not respondent's testimony at the point of contradiction. It is no doubt true that respondents have grown attached to the child and that they are considerably out of pocket in the services they have rendered. But petitioner gave the court every evidence of maternal love and respondents could have prevented the present unfortunate situation had they refused to keep the child except as her legally adopted parents.

"The remaining question is whether the child should be taken from respondents when the mother by force of circumstances, is unable to care for her personally and must, if awarded custody, place her in the home of her sister in Uniontown, Pennsylvania. We have found that petitioner has not lost her rights as a mother during the child's stay with respondents. She is, therefore, entitled to custody and may arrange for care and maintenance in a manner agreeable to herself, provided the child's general welfare is conserved. Petitioner's sister and brother-in-law, unlike respondents, have children of their own and they seem to be sensible parents. With her child for the time being in their care, petitioner will, as she testified, visit her daughter at week-ends and the relation of mother and daughter will be properly maintained in a home congenial to both. On the other hand, it would be unlikely, if the child remained with respondents, that petitioner and respondents could resume the same cordial relationship which once existed; now that the child knows that petitioner is her mother, the latter's visits would be awkward and embarrassing to all concerned; and it is possible that the child might be reared in an atmosphere hostile to her mother."

The order of the court giving the custody of the child into the care of her mother, Mary Elizabeth Williams, is affirmed. Appellants to pay the costs.